PHILIP SCHNEIDER BREWING CO. v. AMERICAN ICE–MACH. CO.[1]

(Circuit Court of Appeals, Eighth Circuit. October 12, 1896.)

No. 724.

1. IMMATERIAL TESTIMONY—CROSS-EXAMINATION.
   Defendant cannot call out immaterial and irrelevant testimony on the cross-examination of plaintiff's witness, and then introduce testimony to rebut the same.

2. GENERAL AND SPECIFIC DENIAL—CODE OF COLORADO.
   Under section 56 of the Code of Colorado, the answer of the defendant is required to contain a general or specific denial of each material allegation in the complaint intended to be controverted; and, if it contains both a general and a specific denial, the general denial raises no issue outside of the specific denial. Therefore, in an action to recover a balance of the price of an ice machine, where the complaint avers that plaintiff has fully performed all the terms and conditions of the contract on its part, and the answer, after a general denial thereof, specifies various parts of the machine as being defective, the evidence of defects must be confined to such parts, and defendant cannot introduce evidence to show that other parts were not in compliance with the contract.

3. CODE PLEADING—CONDITION PRECEDENT.
   Under the Colorado Code, when a defendant relies upon a condition precedent in a contract as an excuse for not performing the contract on his part, he must set out specifically the condition and the breach, so that the plaintiff and the court may be advised of the issue to be tried.

4. SALE—ACTION FOR PRICE—EVIDENCE.
   In an action on contract to recover the balance on the price of a machine sold, where the defense pleaded is that certain specified parts of the machine were defective, the opinions of witnesses as to the value of the machine as a whole, after allowing for the defects, are irrelevant and incompetent.

5. APPEAL—ERROR OF FACT IN CHARGE—GENERAL EXCEPTIONS.
   A general exception to a long paragraph of the charge containing numerous statements of fact is ineffectual to raise the point that a particular one of these statements was erroneous.

1 Rehearing denied December 14, 1896.

**6. COUNTERCLAIM—RECOUPMENT—CHARGE OF COURT.**

Defendant is not prejudiced by the failure of the court to submit his counterclaim to the jury when such counterclaim is a mere repetition of alleged damages and losses set up by way of recoupment, as to which the court charged that defendant might recoup from the plaintiff out of the sum claimed, and the jury found the defendant was not entitled to recoup for any sum.

**7. APPEAL—MOTION FOR NEW TRIAL.**

The overruling of a motion for a new trial by a federal court cannot be assigned as error.

**8. SAME—AMENDMENTS TO PLEADINGS.**

The question of the allowance or refusal of amendments to the pleadings is one resting in the discretion of the trial court, and is not reviewable on appeal.

**9. SAME—VERDICT—ASSIGNMENTS OF ERROR.**

Objections to the amount or form of a verdict cannot be noticed in the appellate court, when such objections were not brought to the attention of the trial court.

In Error to the Circuit Court of the United States for the District of Colorado.

This was an action brought in the United States circuit court for the district of Colorado by the American Ice-Machine Company, the defendant in error, against the Philip Schneider Brewing Company, the plaintiff in error, to recover the balance of the purchase price of an ice-making machine, and the value of certain goods, wares, and merchandise. The complaint divides the plaintiff's claim into three causes of action, which are separately stated. The first is founded on a contract for an ice machine purchased by the plaintiff in error from the defendant in error at the agreed price of $11,580, upon which it is averred payments have been made amounting to $7,723.57, leaving due the sum of $3,856.43. The complaint contained the usual averment that the plaintiff "has fully complied with and performed all and singular the terms and conditions" of the contract upon its part. The second is founded on an account for apparatus known as "temperators," sold and delivered by the plaintiff to the defendant at the agreed price of $1,200, and for a filter, sold and delivered at the agreed price of $250; and upon this account it is averred $1,393 was paid, leaving due thereon $57. The third is founded on an action for sundry items of goods, wares, and merchandise sold and delivered by the plaintiff to the defendant at the agreed price, and for the reasonable price and value of $1,639.19.

The following is a copy of the contract for the ice machine:

"This agreement, made this 27th day of April, 1893, by and between the American Ice-Machine Company, a corporation existing under and pursuant to the laws of the state of Missouri, having its general office in the city of St. Louis, state of Missouri, party of the first part, and Philip Schneider Brewing Co., brewers, a corporation duly organized and created under the laws of the state of Colorado and doing business in the city of Trinidad, county of Las Animas, state of Colorado, party of the second part, witnesseth: That the party of the first part and the party of the second part, for and in consideration of one dollar, by each to the other paid, the receipt whereof is hereby acknowledged, and for other valuable considerations, which are hereinafter specified, do hereby promise, covenant, and agree each with the other, and do hereby bind themselves, their successors, legal representatives, heirs, executors, administrators, and assigns, to faithfully perform, fulfill, and carry out all of the several provisions, conditions, and requirements specified in this agreement, to wit: That the said party of the first part hereby agrees to construct for and deliver to the said party of the second part, on its brewery premises situated in the city of Trinidad, Colorado, an ice-making apparatus, as hereinafter specified. The power part of said apparatus shall consist of one vertical steam engine having a cylinder fifteen (15) inches in diameter and twenty (20) inches stroke, supplied with slide valve and valve motion complete, governor, throttle valve, lagging, and insulation. The compression part shall consist of one vertical double-acting ammonia compressor ten (10) inches in diameter and twenty (20) inches stroke, complete, with upper and bottom heads, oil stuffing box, steel suction and discharge valves, piston with steel rod, water jacket, stop valves, etc. Said engine and compressor shall be mounted upon a substantial bedplate and ver-

tical supporting frames, and connected together by a shaft supplied with disk cranks; said shaft to carry in its center a fly wheel of ample size and weight to insure the steady operation of the machine, and the whole to be furnished with a substantial gallery, stairs, and hand railing. That the party of the first part will supply and erect a battery of two open-air ammonia condensers of the proper size for the liquefaction of the gas expelled by the compressors, with headers, valves, and connections arranged so that either can be used separately. Two vertical open-air ammonia condensers, made of two-inch special pipe, each twenty-four pipes high and twenty (20) feet long, supported by cast iron brackets, braced with wrought iron tie rods, and supplied with galvanized gutters for distributing the condensed water, each condenser to be supplied with a two (2) inch discharge valve and ¾-inch liquid valve, and connected to manifolds on top and bottom. The condensers to be erected on your present cement condenser floor. Water connections to be run from the present pipe on condenser floor to the gutters on top of new condensers, and supplied with the requisite valves and fittings. Hot gas connection to be run from the present discharge pipe or high-pressure drip to the new condensers, and liquid connection to be made with present liquid receiver or pipe running thereto. Suction and discharge connections of the proper size to be made between the new machine and existing suction and discharge pipes, making the ammonia system complete. One steel freezing tank, measuring inside about thirty-seven (37) feet long, seventeen feet four inches (17' 4") wide, and forty-six (46) inches high, made of 3-16" steel, having central and end partitions to facilitate the circulation of the brine, and well braced with angle irons and tie rods, to prevent bulging when filled with brine. The tank to be provided with top framework for supporting the covers, to be insulated on all sides and ends with not less than eight inches in thickness of mineral wool, held in place by substantial wood framework, and all exposed sides or ends to be neatly and substantially lagged with matched and dressed lumber. Two hundred and forty-six (246) well-insulated covers to be furnished for the top of tank, made of two thicknesses of spruce with paper between, and provided with galvanized staples for lifting. One brass rotary agitator to be mounted in the freezing tank, for circulating the brine, and one vertical steam engine to be furnished and erected for driving the same, including all shafting, hangers, pulleys, and belting required for connecting the engine with the agitator. Fourteen (14) ammonia evaporating coils, made of two (2) inch special pipe, each coil to be about thirty-five (35) feet long, and together containing not less than two thousand (2,000) lineal feet of pipe, to be erected in the freezing tank. The coils to be supported by wrought iron stands and braces, and each coil to be supplied with a one (1) inch suction valve, and a one-half inch expansion valve, making each coil independent of the others. The coils to be connected on top with a 2½-inch suction manifold, and on bottom with a 1½-inch liquid manifold, each of extra heavy wrought iron. Suction connection to be run from freezing tank manifold to machines or to present main suction pipe, and liquid connection from liquid receiver to liquid manifold on freezing tank. All connections to be arranged so that either or both machines can be used for the operation of the ice plant and cellar work. One complete apparatus for the distillation and filtration of 12 tons of water per twenty-four hours for the ice cans, consisting of open air steam condenser and heavy iron pan for same and two filters. All parts except condenser pan and water cooler pan to be galvanized, and all to be arranged so that they can be readily cleaned without disconnection. The steam condenser to be connected with the main exhaust pipe from machines, and all connections to be made between the different parts of the distilling and filtering system. Water connections to be run from a convenient point in the present mains to the water gutters of steam condenser and water cooler. One automatic foot valve for filling the cans, including all hose and pipe connection. One combined chain hoist and traveling crane for lifting and handling the ice and cans. One hot-water tank for thawing the ice from the cans, and one of our improved dumpers for emptying the cans. Two hundred and forty (240) galvanized ice cans, made of No. 18 iron, measuring 8"x16"x42", well riveted and soldered water-tight, and provided with wrought iron band around top, to make blocks of ice weighing one hundred and fifty (150) pounds. All piping and tank work to be coated with the best quality of mineral waterproof paint, and the machine to be painted in an artistic manner, in keeping with this class of machinery. Material and workmanship throughout to be first-class and warranted, and the machine and plant, in all of their parts,

to be constructed in accordance with the latest and best practice. We will guaranty that the machine, when properly operated, and at normal speed, shall have power and capacity to develop a refrigerating duty equivalent to that produced by the melting of twenty (20) tons of ice per day of twenty-four hours, or for the production of twelve (12) tons of good, marketable ice per day of twenty-four hours. The said party of the first part further guaranties that the distilling and filtering apparatus, the freezing tank, and the evaporating coils shall have a capacity for the production of twelve tons of good, marketable ice per day of 24 hours. That the party of the first part will provide a good and competent engineer to remain with the machine and plant for a period of thirty days to give them a thorough test, and to instruct the engineer of the party of the second part in the handling and management of the same. That the party of the first part will erect the plant hereinbefore specified on the premises of the said party of the second part, ready to charge with ammonia, for the sum of eleven thousand, five hundred and eighty ($11,580) dollars, the said party of the first part to make all connections as mentioned, and the said party of the second part to make the main steam and exhaust connections to and from the machine. That the said party of the second part will pay to the party of the first part, as consideration for constructing and erecting the machine and plant, as hereinbefore specified, the said sum of eleven thousand five hundred and eighty dollars, as follows: First payment, the sum of $2,895.00 (two thousand eight hundred and ninety-five dollars), when the tank and pipe are delivered on premises. Second payment, the sum of $2,895.00 when the machine is erected and performing work. Third payment, the sum of $2,895.00 (two thousand eight hundred and ninety-five dollars), 60 days after the machine has been in operation and doing the work guarantied. Fourth payment, the sum of $2,-895.00 (two thousand eight hundred and ninety-five dollars), (60) sixty days after third payment. All payments to be made with exchange on St. Louis in full. The party of the second part agrees to pay for account of the party of the first part all freight and hauling charges on the machine, piping, and other materials; the amount of said charges to be deducted from the last payment. It is understood and agreed that no agreement, verbal or otherwise, exists in regard to this contract, other than is herein expressed."

The answer, "for a first defense to the first cause of action," admits the making of the contract, and in the words of the complaint denies "that the plaintiff has fully complied with and performed all and singular the terms of said contract"; admits making payments on the machinery mentioned in the contract, but denies that it has so paid the sum of $7,723.57 as alleged in the complaint, and avers that $838.50 of that sum was paid on account of other goods, wares, and merchandise. The answer then states "for a second defense to the first cause of action":

"(1) Defendant alleges that the plaintiff failed and neglected to perform the contract in the complaint set forth, according to the terms thereof, in the following particulars: The freezing tank agreed in said contract to be constructed was not well braced with angle irons and tie rods, to prevent bulging when filled with brine. Said freezing tank was not properly provided with top framework for supporting the covers. The exposed sides and ends of said freezing tank were not neatly and substantially lagged with matched and dressed lumber, nor was the woodwork of said tank in any respect constructed in a good, substantial, and workmanlike manner. Plaintiff did not furnish one complete apparatus for the distillation and filtration of twelve tons of water per twenty-four hours for the ice cans. Plaintiff did not furnish 240 galvanized ice cans made of No. 18 iron. All piping and tank work furnished by plaintiff pursuant to said contract was not coated with the best quality of mineral waterproof paint. The material and workmanship was not first class, nor was said machine or plant constructed in accordance with the latest and best practices. Said machine, when properly operated, at normal speed, did not and does not have power and capacity to develop a refrigerating duty equivalent to that produced by the melting of twenty tons of ice per day of 24 hours, or for the production of twelve tons of good, marketable ice per day of 24 hours. The distilling and filtering apparatus, the freezing tank, and the evaporating coils did not and do not have capacity for the production of twelve tons of good, marketable ice per day of 24 hours.

"(2) That by reason of the failure on the part of the plaintiff to fulfill and perform said contract in the complaint set forth in the particulars aforesaid, said ice-making

apparatus, as constructed by the plaintiff, is worth very much less than $6,884.99, the amount which defendant has heretofore paid to the plaintiff on account of the price thereof, and this defendant has more than paid the said plaintiff all sums of money to which it has become entitled under and by virtue of the terms of said contract."

The foregoing averments pointing out specifically the particular parts of the ice-making apparatus which it was alleged were defective are repeated in the answer, and made the basis of a counterclaim of $3,000, and as a foundation for other counterclaims it is alleged that the joints connecting the pipes used in the construction of the machine became loosened and disconnected, permitting 22 drums of ammonia to escape, to the defendant's damage in the sum of $1,000; that by reason of the inferior construction of the ice machine the defendant was compelled to expend $900 for repairing same; that by reason of inferior workmanship the steel freezing tank became leaky, and brine escaped, to the defendant's damage in the sum of $200; that the plaintiff failed to furnish proper galvanized iron cans made of No. 18 iron, as required by the contract, to the damage of the defendant in the sum of $1,950; that the defendant paid the plaintiff $250 for a filter, which the plaintiff warranted to be well constructed, and of a given capacity, and alleges a breach of warranty, to the defendant's damage in the sum of $250.

There was a jury trial, and a verdict and judgment in favor of the plaintiff for the sum of $5,562.59, and the defendant sued out this writ of error.

Robert T. Yeaman, Caldwell Yeaman, and Frank E. Gove, for plaintiff in error.

Lucius M. Cuthbert (Henry T. Rogers and D. B. Ellis on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The second, third, fourth, fifth, sixth, eighth, ninth, tenth, and eleventh assignments of error rest on the ruling of the circuit court in sustaining objections to interrogatories propounded to the witnesses by the plaintiff in error, intended to elicit the witnesses' opinions or knowledge as to whether there were any defects in the engine and the ammonia compressor. The objection to these questions was sustained by the circuit court on the ground that the defendant, in its answer, pointed out specially the particular parts of the ice machine which it alleged were defective, and that these specifications did not include the engine or compressor, and that the inquiry should, therefore, be confined to those parts of the machinery and apparatus to which the defendant had specifically objected in its answer.

The first contention of the plaintiff in error in support of these assignments is that the plaintiff first introduced evidence relating to the engine and compressor, and that the defendant was entitled to rebut such evidence, even though it be conceded to be immaterial and irrelevant under the state of the pleadings. The rule here invoked has no application to this case. The plaintiff introduced no testimony in relation to the engine and compressor. Mr. Maynard, the president of the ice-machine company, was called as a witness by the plaintiff, and on cross-examination by the defendant "described at length, from a drawing or plan, the general construction and operating of the ice-making apparatus furnished by the plaintiff, and stated that, among other things, such ice-making apparatus

consisted of a steam engine, and ammonia compressor, galvanized iron cans, etc., all belonging to the one system and constituting one whole; and that the plant was first class throughout, and all its parts were constructed in accordance with the latest and best practice, according to the contract with defendant; * * * that apparatus erected will manufacture more ice than guarantied; that plaintiff had done its duty, and wanted payment due." These statements of the witness were brought out in his cross-examination by the defendant. The defendant cannot call out immaterial and irrelevant testimony on the cross-examination of a plaintiff's witness, and then introduce testimony to rebut the irrelevant matter he himself called out. Moreover, the mere formal proof that the ice machine complied with the contract would not, under the state of the pleadings, authorize the defendant to go into matters irrelevant to the issues made by the pleadings.

It is next insisted that the pleadings presented an issue respecting not only the parts specifically named and alleged in the answer to be defective, but respecting the sufficiency of the whole plant, and every part of it. In answer to the general averment in the complaint that the "plaintiff has fully complied with and performed all and singular the terms and conditions" of the contract on its part, the answer "denies that the plaintiff has fully complied with and performed all and singular the terms and conditions of said contract." This denial is clearly a negative pregnant, and raised no issue. James v. McPhee. 9 Colo. 491, 13 Pac. 535; Bliss, Code Pl. § 332. This denial would be literally true if the plaintiff had failed to perform the contract in some trivial or immaterial respect, whereas a substantial compliance with the contract would entitle the plaintiff to recover; and this denial does not negative the fact that there was such a compliance. But we do not rest our decision upon this ground. It may be assumed that this clause of the answer, standing alone, was a good general denial, and that, if the defendant had said nothing more in its answer, it would have raised an issue as to the sufficiency of every part of the plant. But the defendant was not content to rest on this general denial. It afterwards chose to make its denial specific, and to point out with great particularity the parts of the ice machine which it claimed were defective. The dubious general denial is followed up by this averment: "Defendant alleges that the plaintiff failed and neglected to perform the contract in the complaint set forth, according to the terms thereof, in the following particulars." Here follows a particular specification of the parts of the machine alleged to be defective which we have set out in full in the statement.

The counterclaim set up in the defendant's answer is based on the same alleged defects in particular parts of the machine. Neither in the specific denials nor in the statement of the counterclaim is there any mention of the engine or compressor, or any hint or suggestion that either was defective. Under this state of the pleadings, the plaintiff was not required to move for a more specific statement, or a bill of particulars. If such a motion had been made, it must have been overruled upon the ground that the defendant had stated

with great particularity the parts of the machine which it claimed to be defective. The plaintiff had a right to rely upon this specification of defects. By reference to the contract it will be seen that the manufacture of ice requires an extensive and elaborate machine, composed of numerous parts. The defendant had been operating the machine for some time before it filed its answer. It had knowledge, therefore, of all its defects, large and small; and when it undertook to particularly specify them the presumption is that it specified them all, and the plaintiff had a right to rely upon this presumption. Section 56 of the Code of Colorado provides that "the answer of the defendant shall contain: First, a general or specific denial of each material allegation in the complaint intended to be controverted by the defendant. * * *" It will be observed that the Code does not say that the denial may be both general and specific. The Code contemplates that it will be the one or the other; and, when it is both, the general denial raises no issue outside of the specific denials. Reed v. Hayt, 51 N. Y. Super. Ct. 121. This rule is specially applicable to this case. The ice machine was composed of hundreds of parts. After using the machine for some time, and having had ample opportunity to test its merits and become advised of its defects, if it had any, the defendant, in its answer, undertook to point out, and did point out, specifically, the parts of the machine which it alleged to be defective, and wherein they were defective. This was proper pleading in a case of this character. The plaintiff was thus advised, as was its right, of the precise issues it had to meet. It was not required to come prepared to meet any others. In this state of the pleadings it would be a great hardship on the plaintiff to require it to meet charges of defects in other parts of the machine, made for the first time at the trial. The surprise and hardship would be greater than it is in ordinary cases, because the evidence to meet the new charges would, in a great measure, have to be of a scientific and expert character; for a witness who might be thoroughly qualified to testify regarding the sufficiency of the freezing tank might know very little about the ammonia compressor or the engine. In Minor v. Bank, 1 Pet. 46, 67, the supreme court, speaking by Mr. Justice Story, said:

"There is no question that the replication is not drawn with technical accuracy and correctness; and, if the plea be a good plea of general performance, it is clear, both upon principle and authority, that a special breach ought to have been assigned in the replication; and the objection, if insisted upon by way of demurrer, for that cause, would have been insuperable. The reason is that the law requires every issue to be founded upon some certain points; that the parties may come prepared with their evidence, and not be taken by surprise, and the jury may not be misled by the introduction of various matters."

A glance at the contract between the parties discloses how extremely indefinite would be an issue based on a negative pregnant averment that it had not been "fully" complied with.

The learned counsel for the plaintiff in error, in their brief, after calling our attention to section 66 of the Colorado Code, say:

"Performance was pleaded in this case substantially pursuant to the above provision of the Code. That performance was controverted. Plaintiff must, therefore, have established the fact showing such performance."

In Kahnweiler v. Insurance Co., 32 U. S. App. 230, 14 C. C. A. 485, and 67 Fed. 483, we had occasion to consider a provision of the Kansas Code identical with section 66 of the Colorado Code, and we there said:

"In pleading the performance of a condition precedent under the code system, it is not necessary, as it was at common law, to state the facts showing such performance, but it is sufficient to state generally 'that the party duly performed all the conditions on his part; and, if such allegations be controverted, the party pleading must establish on the trial the facts showing such performance.' Gen. St. Kan. 1889, par. 4205. The policy in suit contains the usual conditions in such policies with reference to notice and proofs of loss, etc., and declares that, 'until such proofs, plans, and specifications, declarations, and certificates are produced by the claimant, and such examinations and arbitrations permitted and had, the loss shall not be payable.' The plaintiff's complaint made the policy in suit a part thereof, and contained the averment that the plaintiff had 'performed all the conditions of the said policy on their part.' The only answer to this allegation of the complaint was a general denial. Assuming for the present that the obtaining of an award was a condition precedent to the right of the plaintiffs to maintain their action, did this general denial put in issue the allegation that the plaintiffs had complied with that condition of the policy? In other words, was the general allegation of due performance properly 'controverted,' within the meaning of the Kansas Code? We think it is clear that it was not. If the defendant intended to rely upon the nonperformance by the plaintiffs of one or more of the numerous conditions of the policy, it should have pointed them out specifically, and alleged their breach. In no other way could it be known to the parties or the court what issues were to be tried. Under the Code, when a defendant relies upon a breach of a condition precedent in a contract as an excuse for not performing the contract on his part, he must set out specifically the condition and the breach, so that the plaintiff and the court will be advised of the issue to be tried. Bliss, Code Pl. (3d Ed.) § 356a; Nash, Pl. pp. 300, 302, 782. In the case of Preston v. Roberts, 12 Bush, 570, 583, the court of appeals of Kentucky said: 'The plaintiff being expressly authorized to plead in that manner [general performance of conditions precedent], the defendant must, if he relies upon the fact that any of the conditions precedent has not been performed, specify the particulars in which the plaintiff has failed (Newm. Pl. & Prac. 510, 511; Railroad Co. v. Leavell, 16 B. Mon. 362), thus confining the issue to be tried to such particular condition or conditions precedent as the defendant may indicate as unperformed.' See, to the same effect, Gridler v. Bank, 12 Bush, 333. The cases of Hamilton v. Insurance Co., 136 U. S. 242, 10 Sup. Ct. 945, and Hamilton v. Insurance Co., 137 U. S. 370, 11 Sup. Ct. 133, arose in a code state, and in these cases the defendant set up the condition precedent relied upon as a defense, and specifically alleged its breach, and this is believed to be the uniform practice in all code states. It is also the practice in England, under a statute which, like our codes, permits a general averment of the performance of conditions precedent by the plaintiff. Under that statute, where such a general averment is made in the declaration, any condition precedent, the performance or occurrence of which is to be contested, must be distinctly specified, and its performance negatived in the defendant's answer. For English cases illustrating the rule, see Glenn v. Leith, 22 Eng. Law & Eq. 489; Graves v. Legg, 25 Eng. Law & Eq. 552. In the case last cited, Lord Chief Baron Pollock observes: 'The declaration having averred, according to the fifty-seventh section of the common-law procedure act, the performance of conditions precedent generally, the defendants proceeded in their pleas to specify this condition of declaring the names of the vessels as one of the breaches of which they insist.' "

If the contention of counsel for the plaintiff in error that section 66 of the Colorado Code is applicable to the case at bar is sound, then the rule in the case last cited applies; and, if the defendant intended to rely upon the fact that a few of the numerous parts of the ice machine were defective, it should have pointed them out specifically, as was done. The nature of the contract in suit and of the

defense brings the case within the reason of the rule laid down in Kahnweiler v. Insurance Co., supra.

Waiving any consideration of the further question whether the exceptions to the ruling of the court sustaining the objection to the questions propounded to the witnesses by the defendant are not fatally defective for not showing what the excluded testimony was intended to be, and that it was material (Ladd v. Mining Co., 32 U. S. App. 93, 14-C. C. A. 246, and note, and 66 Fed. 880; rule 11 of this court,—11 C. C. A. cii., 47 Fed. vi.), it is apparent that the reason given by the court for excluding the questions was sound.

A witness was asked by the defendant what, from his "experience as an engineer, and his knowledge of the working of the plant furnished by the plaintiff, with the defects which the witness had stated he was aware of, what would the plant, in his opinion, be worth." The court sustained an objection to this question, and this ruling is assigned for error. The plaintiff is not seeking to recover on a quantum meruit. The action was founded on a contract which fixed the price to be paid for the ice plant, and the suit was to recover that price, less the payments which had been made. The defense was that certain specified parts of the ice plant were defective. On this state of the pleadings the witness' opinion as to the value of the ice plant as a whole, after allowing for the defects within his knowledge, was irrelevant and incompetent. Wentworth v. Dows, 117 Mass. 14.

It was not a material error to permit a witness for the plaintiff to state that less ice would be formed with a 16 gauge can than with one of 18 gauge.

Exceptions were taken to portions of the court's charge. The court told the jury:

"As I stated to you, the second cause of action relates to the temperators, which were furnished at the price of twelve hundred dollars, as to which no complaint whatever has been made; that is, there is no defense made as to them. The filter which was distinguished from the filters mentioned in the contract was an independent instrument of the price of $250, of which it is said that the defendant had paid all but $57. The total cost of these instruments, the temperators and filter, was $1,450, and the defendant paid a check for $1,400, the discount upon which was $7, in respect to exchange, leaving $1,393 paid on account of these instruments, so that there was $57 left due upon the filter."

The contention in this court is that this paragraph of the charge misstated certain facts. It is said it is not true that as to the temperators "no complaint whatever has been made; that is, there is no defense whatever made as to them." The charge stated the exact truth. No complaint was made that they were defective. The plaintiff claimed, as stated in the charge, that there was $57 due on the purchase of the temperators and the filter, and the defendant claimed they had been paid for in full, and complaint is made in this exception that the court said "that there was $57 left due upon the filter." Payments were made from time to time by the defendant on its various purchases, and there was some contention as to the proper application of these payments. Applying them as the plaintiff did, it left $57 due on the second cause of action. If the payments were applied to extinguish the $57, then the credits on the

other accounts would be reduced by that sum. The jury found specially that there was $57 due the plaintiff on the second cause of action, which included the filter. But, if the court had erred in its statement of fact that there was $57 due on the filter, the judgment should not be reversed or modified on account of the error. The paragraph of the charge excepted to contains no proposition of law, but some 10 statements of fact, of which the statement that there was $57 due upon the filter is the last. The exception was to the whole paragraph. If the exception is good, it is manifest it would be equally open to the plaintiff in error to contend here that it was not true that the second cause of action related to the temperators, or that they were furnished at the price of $1,200, or that no complaint had been made as to them, or that the filter was not distinguished from the filters mentioned in the contract, or that the price of it was $250, or that it was said "that the defendant had paid all but $57," or that the total cost of these instruments was $1,450, or that the defendant had paid thereon a check for $1,400, or that the discount upon the check for exchange was $7, or that that left $1,393 paid on account of these instruments. It is obvious that a general exception to this long statement of facts furnished to the lower court no clew whatever as to the particular fact that was regarded as erroneous or objectionable, and afforded it no opportunity to correct any inadvertent error in the statement of facts into which it might have fallen, and which would doubtless have been corrected on the instant on being pointed out. The rule on this subject is well settled. In Railway Co. v. Jurey, 111 U. S. 584, 596, 4 Sup. Ct. 566, 571, the supreme court said:

"The last assignment of error which we shall notice is based on the charge of the court to the effect that 'the measure of damages would be the value of the cotton in New Orleans, where it was to have been delivered, together with interest on said sum at eight per cent. per annum from the time when the cotton ought to have been delivered.' The error alleged is that the rate of interest should have been placed at five per cent., which is the legal rate in Louisiana, where the contract was to be performed, and not at eight per cent., which was the legal rate in Alabama, where the contract was made. Conceding that the charge in respect to the rate of interest was erroneous, the judgment should not be reversed on account of the error. The charge contained at least two propositions: First, that the measure of damages was the value of the cotton in New Orleans, with interest from the time when the cotton should have been delivered; second, that the rate of interest should be eight per cent. It is not disputed that the first proposition was correct. But the exception to the charge was general. It was, therefore, ineffectual. It should have pointed out to the court the precise part of the charge that was objected to. 'The rule is that the matter of exception shall be so brought to the attention of the court before the retirement of the jury to make up their verdict, as to enable the judge to correct any error, if there be any, in his instructions to them.' Jacobson v. State, 55 Ala. 151. 'When an exception is reserved to a charge which contains two or more distinct or separable propositions, it is the duty of counsel to direct the attention of the court to the precise point of objection.' Railroad Co. v. Jones, 56 Ala. 507."

The doctrine of this case has been repeatedly affirmed by that court and by numerous cases in this court. Price v. Pankhurst, 10 U. S. App. 497, 3 C. C. A. 551, and 53 Fed. 312; McClellan v. Pyeatt, 4 U. S. App. 319, 1 C. C. A. 613, and 50 Fed. 686. Where the exception is not to a statement of the rule of law, but only to an error

in the statement of facts, such as an error in dates or amounts, or in the statement of what the pleadings contain, or to the absence of some qualifying word or phrase in the definition of a rule of law, the exception should point out distinctly the very error or mistake complained of. Such errors frequently occur, but always from inadvertence, and often from clerical misprision; and, when called to the attention of the court, as they should be, are always corrected. An exception to the whole charge or any considerable portion of it affords not the slightest clue to such errors as we have mentioned, and affords no opportunity for their correction by the trial judge. An observance of the proper rule serves to correct errors of fact as well as hasty, inaccurate, or misleading expressions in the charge, and removes any ground for exception, and prevents further litigation on immaterial matters. Under this well-settled rule, the exception we are considering was too broad, and goes for nothing. The exceptions to other parts of the charge are subject to the same objection.

To a portion of the charge comprising two-thirds of a printed page, and containing several propositions of law, the correctness of some of which is not challenged, there was a general exception. Waiving the objection of the sufficiency of the exception, the errors assigned upon this part of the charge have no merit. It said it was error for the court to tell the jury that:

"I am inclined, in looking over the whole case, to the opinion that the defendant cannot be entitled to anything more than to recoup—as we express it—out of the sum his damages in respect to the defects of the machine and the losses he has sustained. That the defendant may recoup from the plaintiff out of the sum claimed by him on the machine $5,059.31, the damage which he may have sustained in respect to these defects. * * *"

On a different state of facts it might have been error not to submit to the jury the counterclaim. The clause of the instructions quoted was based on the court's view of the evidence, and that it was a sound view is demonstrated by the verdict of the jury, which allowed the defendant nothing by way of recoupment, but found in favor of the plaintiff for the whole amount of its claim. As the counterclaim was in fact a mere repetition of the alleged damages and losses set up by way of recoupment, it is obvious that the defendant was not prejudiced by the failure of the court to submit the counterclaim to the jury, or by the statement in the paragraph we have quoted that the amount claimed by the plaintiff on the machine was $5,059.31, when it was only $3,856.43.

Exception is taken to the following paragraph of the charge:

"The testimony of the man who made the Belleville cans, that they were really cans made from No. 16 iron, is very strong, indeed, to show that the original cans were made within the terms of the contract; and perhaps I ought to state to you with reference to those cans that they were furnished by the plaintiff to the defendant, that the circumstance of their tipping in the brine tank is not of any controlling weight if you believe that they were made of No. 18 iron. The contract specifies that they were to be made of No. 18 iron, and that I would understand to be American gauge; and not only so, but of the gauge specified in the act of congress which had been passed a month preceding the making of this contract."

It was competent for the court to express to the jury its opinion that the testimony was "very strong, indeed, to show that the origi-

PHILIP SCHNEIDER BREWING CO. V. AMERICAN ICE-MACH. CO. 149

nal cans were made within the terms of the contract." The only defect claimed to exist in the cans was that they were not made "of No. 18 iron." It was not error, therefore, for the court to tell the jury that the circumstance of the cans tipping in the brine was of no controlling weight if they were made of No. 18 iron, for the reason that as to them the only issue was whether they were made of No. 18 iron. The complaint is made that in referring to the gauge by which the number of the iron out of which the cans were made was to be determined, the court remarked that it understood it "to be American gauge, and not only so, but of the gauge specified in the act of congress." It said that the court should have said "United States" instead of "American," where the latter word occurs in the quoted paragraph. Conceding this to be so, the error should have been called to the attention of the lower court at the time. Assuming that there is an American gauge and a United States gauge, it is plain that the gauge applicable to these cans was the gauge established by act of congress, whether it be called "American" or "United States"; and in substance and effect the court so told the jury, who could not have understood the charge in any other sense.

The overruling of a motion for a new trial is not the subject of an assignment of error in this court. This rule has been too often repeated to require a citation of the cases. And the question of the allowance or refusal of amendments to the pleadings is one resting in the discretion of the trial court, and is not reviewable in this court. Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, and cases there cited.

Finally, complaint is made that the verdict of the jury is in excess of the amount claimed in the pleadings by $9.97, and is otherwise informal. These objections were not brought to the attention of the lower court, and cannot, therefore, be noticed by this court. It is the province of an appellate court to review the rulings of the trial court on questions actually brought to the attention of that court, and decided by it. This rule is essential to preserve the character of this court as a court of review. Railway Co. v. Henson, 19 U. S. App. 169, 7 C. C. A. 349, and 58 Fed. 531; King v. Asylum, 21 U. S. App. 481, 525, 12 C. C. A. 145, and 64 Fed. 331, 359; Elliott, App. Proc. §§ 770, 771; Manufacturing Co. v. Joyce, 8 U. S. App. 309, 4 C. C. A. 368, and 54 Fed. 332. In the last case cited, the court say:

"The rule is well established that the appellate court will only permit those matters to be assigned for error that were brought to the attention of the court below during the progress of the trial and then passed upon."

We may add that we perceive no substantial error in the verdict. Construction Co. v. Fitzgerald, 137 U. S. 98, 112, 11 Sup. Ct. 36, 41. The judgment of the circuit court is affirmed.