## REPAUNO CHEMICAL CO. v. VICTOR HARDWARE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. April 30, 1900.)

No. 1,226.

1. APPEAL—SPECIFICATION OF ERRORS—COURT RULES.

Under rule 24 of the circuit court of appeals (47 Fed. xi.), providing that in cases brought up by writ of error the specification of errors relied upon shall set out separately and particularly each error asserted and intended to be urged, errors assigned, but not set out and relied upon in argument, will be disregarded by the court.

2. SAME—EXCEPTIONS.

Where an objection to the offer of a letter·in evidence is sustained "until further proof," and the party offering it saves an exception, but, when the letter is finally offered, and an objection to its introduction is again sustained, no exception is saved, its exclusion cannot be made the subject of complaint on appeal.

3. SAME—ERROR WITHOUT PREJUDICE.

Where a letter excluded from evidence is afterwards admitted as a part of other documentary evidence, and is considered by the jury, any error in its rejection on the first offer is without prejudice.

4. FRAUDULENT CONVEYANCES—EVIDENCE—LETTER ADDRESSED TO MERCANTILE AGENCY.

A letter addressed by a creditor to a mercantile agency, stating that she did not intend to push a debtor named, as he had ample time, and was meeting his notes as they became due, is not admissible in evidence on behalf of other creditors of such debtor in an attack upon a conveyance by the debtor to the writer of the letter, in the absence of evidence that the letter was ever communicated to the other creditors.

5. INSTRUCTIONS—EXCEPTION TO CHARGE IN GROSS—APPEAL.

Where the only exception to the instructions to the jury is to the entire charge as a whole, which contains several distinct propositions of law, it will not avail the appellant if any part of the charge is good.

6. FRAUDULENT CONVEYANCES—PREFERENCES—INTENT TO HINDER AND DELAY.

Where the insolvency of a debtor is known to his creditors, one creditor has the right to secure the payment of ·his claim through the conveyance to him of all the debtor's property. Where there is no secret trust or fraudulent undervaluation of the property, other creditors have no legal ground of complaint.

7. SAME.

Although the effect of a conveyance by a debtor to one of his creditors is to place the property conveyed beyond the reach of his other creditors, and leave him nothing with which to pay his other debts, such act is not hindering or delaying creditors in the legal sense, and will not entitle the unsecured creditors to recover the property from the preferred creditor.

8. SAME—HASTE AND SECRECY.

Where a creditor accepts property in absolute payment of a valid indebtedness, without any reservation or secret trust for the benefit of the debtor, and there is such a change of possession as the property fairly admits of, the transaction is valid, without regard to whether it was consummated in haste and secretly, or openly and leisurely, or in daylight or in the nighttime.

9. SAME—DISCREPANCY BETWEEN VALUE OF PROPERTY AND DEBT.

A creditor whose debt is payable in money has a legal right to insist that the cash value of the property received in payment shall be equal to the amount of his debt, and the discrepancy between that value and the amount of the debt must be clearly shown to be very considerable before the transaction can be challenged on the ground that there was a fraudulent overpayment.

In Error to the Circuit Court of the United States for the District of Colorado.

The Repauno Chemical Company instituted this action against the Victor Hardware Company on August 2, 1897, and caused a writ of attachment to be issued and levied on a stock of merchandise, and certain accounts were also garnished as the property of the defendant, the Victor Hardware Company. H. B. Roby filed her intervention in the cause, claiming both the stock of goods and the accounts seized under the writ of attachment as her property, alleging that she purchased the same from the Victor Hardware Company on the 30th of July, 1897. and was in possession of the same at the time of the seizure under the writ of attachment; that the Victor Hardware Company was indebted to her in the sum of $17,950 on notes executed by the company on July 15, 1896; that on July 30, 1897, there was due on the notes from the hardware company, after allowing all credits, the sum of $15,067; that the hardware company was also indebted to the Mine & Smelter Supply Company in the sum of $4,957.03, which claim had been purchased by and assigned to the intervener; that on July 30, 1897, she purchased the stock of goods belonging to the hardware company, together with the books and accounts, for the sum of $20,018.73, and the same were, in conformity with the resolution of the board of directors of the hardware company, delivered to her; that she immediately took possession of the property, and conducted a business on her own account until August 2d, when the United States marshal took the property from her under and by virtue of the writs of attachment issued in this cause. The plaintiff filed an answer to this intervention, denying there was any consideration for the transfer, denying that she was the owner of the property attached, denying that the sale was made by the hardware company to the intervener in good faith; and alleging that there was nothing due to the intervener from the hardware company, but that she was merely a stockholder in the hardware company; that the notes of the hardware company held by the intervener were made in the name of the company without authority; that they did not evidence any just indebtedness; that the company never entered them upon its books, or mentioned them in any statements which it made to the commercial world to enable the company to obtain credit; that the claim of the Mine & Smelter Supply Company against the hardware company was sold and assigned to the intervener to assist in the scheme to defraud the creditors of the hardware company; that the property sold to the intervener was of the value of $90,000; and that the entire transaction was fraudulent as against the plaintiff and the other creditors of the hardware company. To this answer a reply was filed denying that there was any fraud; denying knowledge of any false statements made by the hardware company for the purpose of obtaining credit, if any such were made by the company; denying that the property conveyed was worth $90,000, or any more than she paid for it; and averred that the sale of the merchandise and accounts was made in good faith to the intervener for the purpose of liquidating and paying indebtedness due her from the hardware company. There was a trial by jury, and a verdict and judgment for the intervener, and the plaintiff sued out this writ of error.

W. S. Decker (Henry T. Rogers, Lucius M. Cuthbert, and Daniel B. Ellis, on the brief), for plaintiff in error.

W. S. Morris (Charles J. Hughes, Jr., and B. H. Giles, on the brief), for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

There are a number of errors assigned, but in the brief of the learned counsel for the plaintiff in error, who did not try the case below, only two of the assignments of error are set out and relied upon. In City of Lincoln v. Sun Vapor Street-Light Co., 19 U. S. App. 431, 8 C. C. A. 253, 59 Fed. 756, we announced our purpose to require a com-

pliance with rule 24 of this court, and it has been applied in numerous cases since. Haldane v. U. S., 32 U. S. App. 607, 16 C. C. A. 447, 69 Fed. 819; National Bank of Commerce of Kansas City v. First Nat. Bank, 27 U. S. App. 88, 10 C. C. A. 87, 61 Fed. 809; Hoge v. Magnes, 56 U. S. App. 500, 29 C. C. A. 564, 85 Fed. 355.

We proceed to the consideration of the errors assigned and discussed in the brief of counsel for the plaintiff in error. The first assignment of error is as follows:

"That the court erred in refusing to admit in evidence the letter of the intervener sent to R. G. Dun & Co., as follows, to wit:

" 'Victor, Colo., Sept. 24, 1896.

" 'To Whom It may Concern: This is to certify that I am not, neither do I intend to push Greve and Quereau for the amount of their indebtedness to me, as they have ample time, and are meeting their notes as they become due, notwithstanding all reports to the contrary.

" '[Signed]                                    Henrietta Quereau.' "

But the record fails to show that there was an exception saved to the ruling of the court when it was finally offered in evidence and excluded by the court. It is true that when the letter was first offered in evidence and excluded an exception was saved, but that was a mere tentative ruling. As shown by the record, the court, in sustaining the objection, stated: "The objection to this paper is sustained until you make further proof. You may offer it later on possibly." Later on, when the witness Allen was introduced on behalf of the plaintiff in error, the letter was again offered in evidence, when the objection to its introduction as evidence was sustained by the court. To this ruling of the court no exception was then saved, and for this reason the matter is not properly before us for consideration. Paxson v. Brown, 27 U. S. App. 49, 10 C. C. A. 135, 61 Fed. 874. But, in view of the fact that the reports of the commercial agency of Dun & Co. stated the contents of the letter, and these reports were admitted in evidence, and considered by the jury, its rejection was not prejudicial. Besides, when the letter was first offered in evidence, and when the exception was saved, there was no evidence before the jury that the letter had ever been communicated to the creditors, and for this reason the trial judge properly held that it was at that time inadmissible.

The second assignment of error relates to the charge of the court. The charge is lengthy, covering nearly five pages of the printed record, and the only exception taken was to the entire charge; the language of the exception being as follows: "To the giving of which instructions the plaintiff, by its counsel, then and there excepted." The rule is well settled that an exception to a charge of the court in gross, which contains several distinct propositions of law, is not available if any part of the charge is good. Iron Co. v. Blake, 144 U. S. 476, 12 Sup. Ct. 731, 36 L. Ed. 510; Thiede v. Utah, 159 U. S. 510, 16 Sup. Ct. 62, 40 L. Ed. 237; Price v. Pankhurst, 10 U. S. App. 497, 3 C. C. A. 551, 53 Fed. 312; Schneider Brewing Co. v. American Ice-Mach. Co., 40 U. S. App. 382, 23 C. C. A. 89, 77 Fed. 138; McClellan v. Pyeatt, 4 U. S. App. 319, 1 C. C. A. 613, 50 Fed. 686; New England Furniture & Carpet Co. v. Catholicon Co., 49 U. S. App. 78, 24 C. C. A. 595, 79

Fed. 294. But, aside from this fact, a careful examination of the entire charge of the court fails to show any error prejudicial to the plaintiff. The evidence tends to show that the hardware company was insolvent, and indebted to numerous persons, among them the plaintiff in error, and also defendant in error. The jury found the indebtedness due to Mrs. Roby (formerly Mrs. Quereau) was a valid indebtedness, and that the value of the property received by her in payment thereof was not in excess of the amount due to her, and that the sale was absolute, and made in good faith to pay an honest debt. These facts having been established by the verdict of the jury, the only question is, did the hardware company have the right to prefer one creditor to the exclusion of all others? On this point the court instructed the jury as follows:

"The evidence in the case shows a race of diligence between creditors, who, I think, it may be fairly said knew the failing condition of their common debtor, and knew that the latter had the right to make a preference among them, and, as indicated at the outset, the intervener had a right to secure the payment of her claim if the transaction, so far as she was concerned, was honest, and entirely free from fraud, or the knowledge by her of fraud, on the part of her debtor, the Victor Hardware Company. In other words, a mere intent on the part of the debtor, the Victor Hardware Company, in this case, to hinder and delay its creditors, or any one of them, will not of itself render a transfer made in payment of an existing indebtedness void as against the creditor. In order that the intent of the debtor to hinder and delay his creditors by such transfer shall render void a conveyance made in payment of a prior debt, such intent must be participated in by the creditor to whom the conveyance is made. Parties to a business transaction are not presumed to deal with each other in bad faith; but, on the contrary, are presumed to deal honestly and in good faith until the opposite is shown by evidence upon the trial, and any one who alleges such acts are done in bad faith, or for a dishonest and fraudulent purpose, takes upon himself the burden of showing that such is the case. In other words, fraud is never presumed, and it devolves upon him who alleges fraud to show the same by satisfactory proof; that is to say, proof which is satisfactory to the jury."

This question was before this court in Rice v. Commission Co., 36 U. S. App. 266, 18 C. C. A. 15, 71 Fed. 151, and we there said:

"Fraud and collusion cannot be predicated upon the fact that a debtor consented to a judgment for a debt which he honestly owed. Nor is it a fraud for a debtor to consent to a judgment in favor of one of his creditors, and deny that favor to all others. In the absence of a bankrupt or insolvent law, a debtor may lawfully pay or secure one creditor to the exclusion of all others. The preference may be given in many ways, but most commonly it is accomplished by paying the debt in money, or by the debtor's selling or mortgaging his property to his creditor, or by confessing a judgment in favor of his creditor, followed by execution and a levy upon the debtor's property. The validity of the preference is not affected by the fact that it was accomplished quickly, or secretly, in order to prevent the interference of other creditors."

A debtor who has many creditors may pay one of them in property in full, though it takes all his property, and leaves nothing for his other creditors. The debtor has an undoubted right to make the preference, and the creditor has an undoubted right to take his debtor's property in payment of his debt. While the questions in cases like this are very plain, they are sometimes obscured, and the minds of the jury confused, by telling them that any action of the preferred creditor and debtor which had the effect to hinder, delay, or defraud the debt-

or's other creditors is fraudulent and void. They should be told, in this connection, that, although the acquisition by one creditor of all the debtor's property in satisfaction of his debt to that creditor has the effect to place that property beyond the reach of other creditors, and leave the debtor nothing with which to pay his other debts, yet this is not hindering or delaying his other creditors in a legal sense; that is, it is not fraudulent as to them, and they cannot complain of it, because the debtor in paying and the creditor in receiving the property did nothing which the law did not authorize them to do, and which every other creditor would have quickly done if he had had the good fortune to be in like favor with the debtor. Other creditors may reproach the debtor for his partiality, but they cannot recover the property from the preferred creditor. The questions in such cases are: Did the debtor owe the debt? Did the creditor accept the property in absolute payment of his debt, with no reservation or secret trust for the benefit of the debtor? Was there such a change of the possession as the property fairly admitted of? When these questions can be answered in the affirmative, the transaction is impervious to attack from any quarter. These are the facts essential to constitute a valid sale of property in payment of a debt, and when they are established it is wholly immaterial whether the transaction was consummated in haste, and secretly, or openly and leisurely, or in daylight or in the nighttime. Lawful contracts, made in good faith, for a lawful purpose, may be made at any hour of the day or night, and publicly or secretly, and leisurely or hastily, as it best suits the convenience or interests of the parties to them. When a creditor is seeking payment from an insolvent debtor, it is commonly to his interest to act with celerity and secretly. If he made open proclamation of his purpose, it would probably result in some other creditor obtaining the preference. A creditor whose debt is payable in money has a legal right to insist that the cash value of the property received in payment shall equal the amount of his debt. And, as the actual cash value of most property is largely a matter of opinion, the discrepancy between that value and the amount of the debt must be clearly shown to be very considerable before the transaction can be challenged on the ground that there was a fraudulent overpayment. That charge is frequently made, but rarely sustained. It was not sustained in this case. The judgment of the circuit court is affirmed.