# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### LIEBING et al. v. MATTHEWS et al. †

(Circuit Court of Appeals, Eighth Circuit. July 25, 1914.)

No. 3978.

1. APPEAL AND ERROR (§ 959*)—REVIEW—DISCRETION OF LOWER COURT—DENYING LEAVE TO FILE SUPPLEMENTAL BILL.

Under old Equity Rule 57, which required leave of court to file a supplemental bill, the action of the court in granting or refusing such leave is not subject to review in the appellate court, unless for a gross abuse of discretion; and where, in a suit to redeem from conveyances alleged to be in effect mortgages, complainants had been given four separate and distinct opportunities to redeem, the last through an extension granted by the master, to which defendants made no objection, but had failed to exercise the right, an order denying leave to file a supplemental bill was within the discretion of the court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3825–3831; Dec. Dig. § 959.*]

2. APPEAL AND ERROR (§ 977*)—REVIEW—DISCRETION OF LOWER COURT—DENIAL OF PETITION FOR REHEARING.

The ruling of a federal court of equity on a petition for rehearing cannot be reviewed by an appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

3. EQUITY (§ 415*)—DECREE—NECESSITY OF FINDINGS OF FACT.

There is no rule in equity that the court shall, in its decree, find all the facts necessary to sustain the decree, except where, in the absence of a finding of facts, it would be impossible to tell what the decree in fact meant; and where, in a suit to redeem from conveyances alleged to be in fact mortgages, by a stipulation of the parties, afterward embodied in an interlocutory decree, complainants were given the right to repurchase the property by the payment by October 1st of an amount to be determined by the master, in which case the suit was to stand dismissed, with further provisions that "under no conditions * * * shall the time to exercise said option * * * be extended * * * nor shall a further extension * * * be asked or sought," and that a failure to exercise such right to repurchase as therein provided "shall ipso facto operate as

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

216 F.—1          † Rehearing denied November 9, 1914.

a dismissal of this action," no finding of facts was necessary to support a decree of dismissal entered after October 1st.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 932–944, 946, 950, 951; Dec. Dig. § 415.*]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by Mary S. B. Liebing and Frederick L. Liebing against Otho F. Matthews, Clyde L. Martin, and R. M. Miller. Decree for defendants, and complainants appeal. Affirmed.

The complainant Mary S. B. Liebing, was the wife of Frederick W. Blees, now dead, and is now the wife of her co-complainant, Frederick L. Liebing. Frederick W. Blees founded the Blees Military Academy of Macon, Mo., which was incorporated under the laws of that state. The corporation had a capital of $250,000, all of which was owned by the complainant Mary S. B. Liebing, except three or four shares necessary to qualify directors. It owned 808 acres of land on which the Academy was located. This property was covered, early in September, 1911, by a deed of trust to William E. Griswold, as trustee for the Northwestern Mutual Life Insurance Company, to secure $65,000 and interest, which was dated February 4, 1910. The real estate and all the personal property of the Academy was also covered by a deed of trust to John Scovern, dated November 21, 1910, to secure divers claims outstanding, about $11,000. The Northwestern Mutual Life Insurance Company deed of trust was in default, and suit was brought to foreclose it on July 19, 1911. The Scovern deed of trust was also in default and Scovern had published notice that he would sell said property on Monday, September 11, 1911. At that time the complainants and the Academy owed other debts to the amount of between $40,000 and $50,000, some of it secured by pledge. Under date of September 9, 1911, complainant Mary S. B. Liebing transferred in blank her stock in the Academy Company and delivered it to the defendants Otho F. Matthews and Clyde L. Martin. Nominally on the same day, although she claims on the Sunday following, the two complainants executed and delivered to Otho F. Matthews, C. L. Martin, and R. M. Miller a bill of sale, reciting that the grantors were then insolvent and conveying substantially all their personal property, except the family pictures, wearing apparel, hogs, and poultry owned by the grantors, but including 2500 shares in the Blees Military Academy Company. About the same time Mary S. B. Liebing deeded a large number of lots in Macon, Mo., to Otho F. Matthews. Under date of September 9, 1911, Otho F. Matthews, Clyde L. Martin, and R. M. Miller agreed in writing with Frederick L. Liebing and Mary S. B. Liebing to reconvey all the property conveyed to them within any time within six months upon the payment of $30,000 and the sums expended by Matthews, Martin, and Miller in payment of debts owing by the Liebings or the Blees Military Academy Company, with interest. Under the same date Matthews, Martin, and Miller leased to Mary S. B. Liebing for six months for the sum of one dollar all the property in the residence occupied by her. On March 1, 1912, Mr. and Mrs. Liebing commenced suit to have said bill of sale and deed of trust declared mortgages, and to be allowed to redeem therefrom, alleging that on August 21, 1911, said Otho F. Matthews was retained by said complainants as their counsel, and later said Clyde L. Martin was retained as fiscal agent, and the complainants executed said instruments through fraud and under pressure, and induced thereto by their attorney and agent. Not only was the bill filed against Matthews, Martin, and Miller, but against all parties who had any claim against any of the property through them, and against the Blees Military Academy Company.

The defendants filed separate answers, but on May 6, 1912, Otho F. Matthews, Clyde L. Martin, and R. M. Miller and G. C. Miller filed a joint answer in which they denied all fraud, and especially denied that any of them sustained, at the time of the transfers, any fiduciary relations to the complainants, and they then continued: "In order to hasten the termination of an un-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

profitable litigation and an unfortunate venture by reason of the institution of this litigation these defendants here offer and tender to the complainants all of said property mentioned in the inventory and schedule, together with all stock in Blees Military Academy Company, and the $500 note made to Otho F. Matthews and in said bill of complaint, and all the lands conveyed to these defendants, or either of them, with the net proceeds of the receiver's sale, upon the payment to these defendants of all the moneys they have advanced and paid out for and on behalf and by reason of the said contracts and agreements and such further sum, if any, for interest, services, time, labor, and expenses of these defendants as may be determined in a summary manner by the court or a master, as the court may direct; and the complainants shall also release and relieve these defendants from all liability, of every kind whatever, that they have assumed to the Northwestern Mutual Life Insurance Company in connection with the $65,000 deed of trust and debt. and also the note and claim of Col. George L. Byroade, hereinbefore mentioned, and the Hunter & Chamier note and claim for $700, set out in Schedule B, as well as all other matters mentioned and set forth in Schedule B, attached to this answer, for which these defendants, or any of them, may have become liable in whole or in part in connection with the transactions here in issue and growing out of the performance of the contracts and agreements executed September 9 and 11, 1911, and also indemnify said defendants, Matthews, Martin, and R. M. Miller, against their liabilities on appeal bonds that they have found it necessary to make on behalf of Blees Military Academy Company, since they have had charge of said academy. And complainants' acceptance of this offer must likewise contain a formal withdrawal of the allegations of fraud. covin, oppression, duress, coercion, and unfair advantage as contained in their said bill, since the same are not true, as these defendants have always maintained and still maintain; that said offer should be accepted by the 20th of May, 1912, so that these defendants may be informed of the action and intended action of the complainants, that they may arrange their business and affairs in accordance therewith, and that the said payments of moneys must be made on or before the June rules."

On May 20, 1912, complainants filed the following: "Now come the complainants, Mary S. B. Liebing and Frederick L. Liebing, and file this their written acceptance of the tender made by the defendants, Otho F. Matthews, Clyde L. Martin, and R. M. Miller, and G. C. Miller, in their answer filed hereon on May 6, 1912; and said complainants further say that they are willing to submit to the court the matter of services, time, labor, and expenses of said defendants, if any services were rendered, time given, and labor performed for the said complainants by the aforesaid defendants. Complainants deny that the said defendants rendered any services, gave any time, performed any labor, or had any expenses for said complainants; but if so be it the court should find otherwise after taking testimony on that subject, then complainants are willing to pay such reasonable, fair, and just sum as the court may fix. All of said tender to be complied with in a reasonable time, after the finding of the court, and within a time, to be named by the court."

On June 3, 1912, complainants filed their replication to the answer of Matthews, Martin, and the Millers in which they said: "They deny that they are in any manner indebted to said defendants for services performed, time given, work done, labor performed, or expenses had or incurred. Complainants, however, say they are willing to submit to the court the manner of services rendered, work done, labor performed, time expended, and expenses incurred by said defendants for the complainants. Further replying, complainants say that said defendants in their said tender demand of complainants that payment of all moneys, claimed by said defendants to be due and owing to them for the items by them alleged to have been paid out, as well as the amounts, if any, found to be due for interest, services rendered, work done, labor performed, time expended, and expenses incurred, must be paid to them by the rule day of the June term, 1912, and that such payment must be made before the amount to which said defendants are entitled for items paid out has been ascertained and verified and the amount to be allowed said defendants for services rendered and work done has been fixed or decreed by the court. Com-

plainants, further replying, say that by reason of the foregoing facts and of the short time allowed for the payment of the moneys that may be found to be due and coming to said defendants, complainants were and are unable to comply with the aforesaid tender of the defendants. And complainants further reply and state, after the amounts which said defendants are entitled to receive for the items by them paid out has been ascertained and verified, and the amount, if any, to which said defendants may be entitled for work done, services rendered, time spent, and expenses incurred, has been fixed by the court, that if a reasonable time be allowed said complainants in which to procure and produce said moneys, they will comply in all respects with the terms and conditions of said tender."

On June 6, 1912, the case was referred to F. L. Schofield, standing master. On July 8, 1912, he reported that he had heard the matter for ten days, and that the matter had been settled by the making of a stipulation, and on the same day the court entered the following decree:

"Now at this day this cause coming on for further hearing on the partial and special report of Hon. F. L. Schofield, master in chancery, which said report recommends the entrance of a judgment and decree as stipulated and agreed to by the respective parties to this action, which said stipulation is in writing and is in words and figures as follows, to wit:

" 'Stipulation.

" 'Now on this 26th day of June, 1912, come the parties hereto before the master, the Honorable F. L. Schofield, and file this stipulation signed by the solicitors of the respective parties, and it is agreed by and between the said parties to this action, as follows, to wit:

" '1. This cause hereby is dismissed as to the following parties, to wit: G. A. Martin, J. M. Miller, John Scovern, State Exchange Bank of Macon, Missouri, Moberly Trust Company of Moberly, Missouri, National Bank of Commerce of Kansas City, Missouri, W. A. Wilson, G. C. Miller, R. L. Matthews, M. A. Matthews, R. S. Matthews and George Perry.

" '2. It is agreed that the instrument recorded on September 11, 1911, in the office of the recorder of deeds in and for Macon county, Missouri, in Book 189, page 175, is now and has been since its execution on the 9th day of September, 1911, a valid and subsisting conveyance of the property therein described and of the property described in the schedule thereto attached, and that the same vested the title to said property in the defendants herein, to wit, Otho F. Matthews, Clyde L. Martin and R. M. Miller; and the same is true in every respect of the warranty deed of same date made by the complainants to the defendant Otho F. Matthews and recorded in Book 190, page 126.

" '3. That at the time of the execution of the instrument mentioned in paragraph 2 hereof, the defendants, Otho F. Matthews, Clyde L. Martin and R. M. Miller, executed to the complainants, Mary S. B. Liebing and Frederick L. Liebing, a certain option contract granting and giving to the said complainants the right to repurchase the property conveyed by said instrument aforesaid, upon the payment to the said defendants, Otho F. Matthews, Clyde L. Martin and R. M. Miller, of certain moneys therein named, and further provided by the terms of said option that the right to repurchase the same would expire within six months after the expiration of the option, that is to say, on March 9, 1912.

" '4. All the parties hereto further agree that all charges of fraud and conspiracy made and contained in complainants' bill of complaint herein shall be and are hereby withdrawn as untrue and without foundation in truth and fact.

" '5. That after the execution of said bill of sale on September 9, 1911, the defendants hereto, Otho F. Matthews, Clyde L. Martin, and R. M. Miller, paid certain bills of the complainants, Mary S. B. Liebing and Frederick L. Liebing, and the defendant Blees Military Academy Company, and the said defendants Otho F. Matthews, Clyde L. Martin and R. M. Miller also assumed and personally bound themselves to pay certain obligations and debts of said complainants, Mary S. B. Liebing and Frederick L. Liebing, and the defendant

Blees Military Academy Company, amounting in the aggregate to approximately the sum of one hundred and eight thousand ($108,000) dollars.

" '6. The complainants, Mary S. B. Liebing and Frederick L. Liebing, shall have the right to exercise their option to repurchase the property conveyed by them to these defendants, Otho F. Matthews, Clyde L. Martin and R. M. Miller, upon the payment to them by these complainants of the sums of money hereinafter mentioned, upon the following terms: Said right to exercise said option shall expire on August 1, 1912, unless the said complainants shall pay to these defendants, Otho F. Matthews, Clyde L. Martin and R. M. Miller, the sum of sixteen hundred twenty-five ($1,625.00) dollars for the purpose of paying the interest to the Northwestern Mutual Life Insurance Company, falling due in the month of August, 1912, and provided further that if the said complainants pay said sum of $1,625.00 on or before August 1, 1912, said payment shall ipso facto extend the time for them to exercise the said option to repurchase said property to the first of October, 1912. Failure to pay said sum of $1,625.00 on or before August 1, 1912, as above provided, shall foreclose and end any and all rights of the complainants to exercise the right to repurchase under said option, and under no condition or circumstance'shall the time to exercise said option to repurchase said property be extended beyond the first of October, 1912, nor shall a further extension or a right to repurchase said property under said option be asked or sought in any way or form whatsoever.

" '7. All costs of this suit shall be paid by the complainants including the costs of the receivership, stenographer's fees, etc. The receivers to make no charges for services, except 'actual expenses.

" '8. Services rendered by the said Otho F. Matthews, Clyde L. Martin and R. M. Miller in furnishing the money and in assuming the liability therefor and in taking care of and preserving the property following the execution of the conveyance to them on September 9, 1911, are hereby admitted to be rendered by them in good faith and the master from the evidence shall determine the amount and value of said services and the amount thereof shall be fixed by him at a sum between eight and fifteen thousand dollars, the amount of which shall be ascertained by the master, as aforesaid, and shall be part of the money to be paid by the complainants upon their exercising the rights to repurchase under the option contract aforesaid.

" '9. All moneys paid out by the said Otho F. Matthews, Clyde L. Martin and R. M. Miller in taking care of and looking after said property so conveyed to them by the instrument mentioned in paragraph 2 hereof, shall be paid by the complainants as a condition precedent to their right of exercising said option of repurchase.

" '10. That before the said complainants, Mary S. B. Liebing and Frederick L. Liebing, shall have the right to exercise said option contract and repurchase the property, as herein provided, they shall release each and all of these defendants, Otho F. Matthews, Clyde L. Martin and R. M. Miller, and also George C. Miller from any and all obligations and liabilities which they or either of them have assumed or incurred on account of any debt or liability or any alleged debt or liability of the Blees Military Academy Company or the complainants, Mary S. B. Liebing and Frederick L. Liebing, or either of them, and the said complainants shall also before exercising the rights of said option to repurchase, pay to the said Otho F. Matthews, Clyde L. Martin and R. M. Miller all sums of money which the said Matthews, Martin and Miller expended in paying debts or liabilities or alleged debts or liabilities of the Blees Military Academy Company or either of the complainants, Mary S. B. Liebing or Frederick L. Liebing, together with seven per cent. interest thereon from the date of said option, to wit, September 9, 1911.

" '11. Before exercising the rights to repurchase said property under their option, said complainants, Mary S. B. Liebing and Frederick L. Liebing, shall pay to the said defendants, Otho F. Matthews, Clyde L. Martin and R. M. Miller, any and all sums of money that the said defendants may hereafter find it necessary to pay on account of their possession and ownership of said property and in taking care of and looking after the same, as well as all debts and liabilities that they may hereafter have to pay for the said Blees Military

Academy Company, or either of the said complainants. All sums hereafter paid by the defendants shall bear interest at the rate of 7% from date of payment.

"12. One of the items of expense to be paid by the complainants to the defendants before the complainants exercise the right to repurchase under their option is that of an attorney fee due to S. H. Ellison for his services rendered in connection with the transactions in September, 1911, and shortly thereafter.

"13. It is further agreed that in event the said complainants and these defendants fail to agree upon the amount of any item herein provided to be paid as a condition precedent to the exercise of said option to repurchase, then the amount of such items shall be determined by the master, which determination shall be final and conclusive; and provided, further, that unless prevented by the failure of these defendants from hearing any contests or controversies as to the amount of any item, the master shall have no right or authority to hear or determine the amount thereof on any date after September 20, 1912, and in event the master has not determined any controversy that may arise as to the amount of an item before September 20, 1912, then the amount of the item as rendered and determined by these defendants shall be the amount agreed upon. The costs attending any hearing before the master for the purpose of determining the amount of any item shall be taxed as to the master may seem proper.

"14. The money in the hands of the receivers shall be paid out by them in accordance with the orders of the court.

"15. It is understood by the parties hereto that some of the chattel property described in the schedule attached to the instrument described in paragraph two herein never came into the possession of these defendants and that in event said complainants exercise their right to repurchase as above provided, then the complainants shall accept in lieu of the property listed in said schedule all of the property that came into the possession of the said defendants by virtue of said transaction and which is now in their possession, excepting, however, that these defendants shall not be called upon to return any property that may be lost or stolen or broken without their fault or negligence.

"16. A failure on the part of the said complainants to exercise their right to repurchase the property under the terms and conditions herein provided, shall ipso facto operate as a dismissal of this action and they shall be forever barred from instituting or prosecuting any other suit or action relative to the subject-matter herein or growing out of or connected with the same.

"17. It is hereby agreed and stipulated by and between the parties hereto that the master is hereby authorized and is respectfully requested to make at once a partial report to the court returning therewith this stipulation and recommending that the court enter a judgment affirming the same, and that he obtain permission further to make a final report as to any questions that he may adjudicate between the parties as provided under the various terms of this stipulation, which said final report shall be made on or before October 1, 1912, and that his report of what he has done in said matters shall be final and conclusive and shall not be subject to exception by either of the parties.

> " 'Mary S. B. Liebing,
> " 'Frederick L. Liebing,
> " 'Complainants.
> " 'Alfred J. Brockschmidt,
> " 'Bernard A. Dolan,
> " 'Mahan, Smith & Mahan,
> " 'Solicitors for Complainants.
> " 'Guthrie & Franklin,
> " 'Campbell & Ellison,
> " 'J. C. McKinley,
> " 'Solicitors for Defendants.'

"And the court, having considered said stipulation and the report and recommendation of the master, and having heard the evidence thus far adduced, doth find that the recommendation of said report ought in all things to be confirmed.

"Wherefore it is by the court ordered, adjudged, and decreed that the said recommendation of the said master be and the same is in all things hereby confirmed, and that said stipulation as hereinbefore set out be and the same is hereby affirmed in all its terms, conditions, and agreements, and established as the decree of this court in the premises.

"And it is further ordered, adjudged, and decreed that the decree herein be left open for such other, further, and final orders, modifications, directions, and judgments to be entered at the foot thereof or otherwise as the exigencies of the cause may require and equity approve.

"And it is further ordered that this cause remain open and continue to stand referred on the orders of reference heretofore entered, and that the master in chancery be and he is hereby directed to proceed and take such proofs as may be offered by the respective parties on all matters arising under the said stipulation and this decree, and report same back to this court, with his findings of fact and conclusions of law thereon, for the information of the court, all as may be needful until the final disposition of this cause."

On September 20, 1912, the master again reported that the complainants should pay $54,169.84 in redemption of said property under the previous decree. No exceptions were ever filed to this report but on October 1, 1912, the complainants filed a petition for leave to file a supplemental bill, in which they set up many of the facts heretofore recited, and alleged:

"That, in entering into said contract of settlement with the said Otho F. Matthews, Clyde L. Martin, and R. M. Miller it was represented unto these complainants by the said Otho F. Matthews, Clyde L. Martin, and R. M. Miller that they had personally assumed and obligated themselves to pay unto the Northwestern Mutual Life Insurance Company of Milwaukee, Wis., certain large sums of money, to wit, the sum of $65,000 and the interest accruing thereon, and that by reason of said undertaking on their part the said Otho F. Matthews, Clyde L. Martin, and R. M. Miller had become personally responsible to the said Insurance Company for the said sum of money.

"Further your petitioners represent that as an inducement to get your petitioners to enter into said contract of settlement the said Otho F. Matthews, Clyde L. Martin, and R. M. Miller represented to your petitioners that by reason of their having assumed said indebtedness of $65,000 to the said Northwestern Mutual Life Insurance Company they thereby became and were in a position to control said indebtedness, and that if said petitioners continued to carry on said litigation, which was the subject-matter of the aforesaid cause, the said defendants, Otho F. Matthews, Clyde L. Martin, and R. M. Miller, would proceed to have the deed of trust, given by the Blees Military Academy Company to W. E. Griswold, trustee, for the benefit of the said Insurance Company, to secure said indebtedness of $65,000, foreclosed as soon as the interest thereon came due on August 4, 1912, and that all the property conveyed by said deed of trust, which is the property in litigation in this case, would be sold, before any decree could be had in the said cause between the parties thereto in the due course of the hearing thereof.

"Your petitioners further represent that, relying wholly and entirely upon the said representations as made by the said Otho F. Matthews, Clyde L. Martin, and R. M. Miller as to the assumption on their part of the said indebtedness, which said information was wholly within the knowledge of said defendants and of which these petitioners had no means or ways of ascertaining the truth thereof, your petitioners, believing in good faith that the said representations were true and correct, entered in good faith into and executed the said contract of settlement hereinabove referred to.

"Further your petitioners represent that after said contract of settlement was entered into a report of Hon. F. L. Schofield was filed with the clerk of said court, finding the making of said stipulation between said parties, and an order of said court was duly signed herein, approving the said master's report, and the making of said contract of settlement between said parties.

"Further, your petitioners represent that, acting in good faith under said contract of settlement, these complainants requested the said defendants to furnish unto said complainants an itemized list of all the moneys that they had paid out and of the expenses that they had been put to by reason of the

contract originally executed between your petitioners and the said defendants. Your petitioners further represent that pursuant to the privileges allowed to them under the terms of said contract of settlement, they have filed exceptions to certain items of the expense and of moneys paid out by the said defendants, and that in accordance with the provisions of said contract of settlement said master in chancery passed upon each and all the items of moneys reported by said defendants as having been paid out, and of each item of expenses incurred or defrayed by said defendants under said contract of settlement, and had fixed the amounts of moneys due and coming to said defendants by his findings made herein and filed with the clerk of said court on the 20th of September, 1912.

"Your petitioners further represent that after the sums, to be paid by said complainants, had been fixed by the master, as aforesaid, your petitioners, acting in good faith, made every reasonable effort to effect a settlement with the said defendants, and for that purpose had gone to Macon, Mo., on three different occasions, and that at the occasion of their last trip to Macon on September 28, 1912, your petitioners were ready, able, and willing to pay to the said defendants, and your petitioners offered to pay to said defendants, the full amount of moneys as had been fixed by the master in the findings in said case, together with all accrued interest thereon and expenses incurred since the filing of the master's report herein on September 20, 1912.

"Further your petitioners represent that the said defendants refused to accept the payment of said moneys as fixed by the master in chancery, that they demanded the payment of other large amounts of money from your petitioners which up to that time had never been presented by said defendants or claimed of your petitioners. Your petitioners represent that said defendants, Otho F. Matthews, Clyde L. Martin, and R. M. Miller were instrumental in having four suits in attachment brought against the Blees Military Academy Company, after they had filed their said items of expenses and demands with said master in chancery, and have also been instrumental in having brought, after the filing of their said demands, five suits against the complainant Mary S. B. Liebing, wherein the said defendants who have heretofore been appointed receivers of this court, and are now acting as such, and are now holding all the chattel property which is in part the subject of this litigation, in their possession, as such receivers, and have caused themselves to be garnisheed in the said five suits brought against the said Mary S. B. Liebing, in order that said chattel property now held by them may not be recovered from them, by your petitioners, except after further long and continued litigation.

"And your petitioners further represent that the said defendants, Otho F. Matthews, Clyde L. Martin, and R. M. Miller, have represented to your petitioners that they have in their possession and know of various other claims upon which suits will be brought against your petitioners and the said Blees Military Academy Company, which they refuse to disclose to your petitioners, and which they insist that your petitioners must settle and pay off before they will reconvey to your petitioners the property which they now have in their possession. And your petitioners further represent that by their acts, their conduct, and the demands made the said defendants Otho F. Matthews, Clyde L. Martin, and R. M. Miller have sought to make and are presently trying to make it impossible for your petitioners to procure from them the property now in their possession by redeeming the same.

"Your petitioners further aver that the representations made by the said Otho F. Matthews, Clyde L. Martin, and R. M. Miller, to the effect that they have become personally responsible for said indebtedness to the Northwestern Mutual Life Insurance Company, and upon the strength, correctness, and truth of which representations your petitioners entered into and made said contract of settlement, are false and not correct. Your petitioners further represent that on the 28th of September they learned for the first time that all such representations made by the said defendants, relative to the assumption on their part of said indebtedness of $65,000 to said Northwestern Mutual Life Insurance Company and the liability which said defendants claimed they were under to said Insurance Company relating to said indebtedness of said $65,-000 were false and are not the truth.

"And that said defendants are not responsible to said Insurance Company for said indebtedness and no part thereof, and that they never assumed the same, and that the said Insurance Company at this time holds no claims. demands, or obligations of any kind against the said defendants.

"Further your petitioners represent that the averments made in paragraph 5 of said contract of settlement, wherein the said defendants Otho F. Matthews, Clyde L. Martin, and R. M. Miller assumed and personally bound themselves to pay certain obligations and debts of your petitioners, Mary S. B. Liebing and Frederick L. Liebing, and of the Blees Military Academy Company, amounting in the aggregate to about the sum of $108,000, which includes said indebtedness of $65,000, are false and not true, and that these petitioners did not know such to be the fact, and had no means of knowing such facts until they learned to the contrary on the 28th of September, 1912. Your petitioners aver and represent that the said contract of settlement was procured from them by the said defendants by misrepresentation and fraud and by circumvention, and that had your petitioners known such facts they would never have assented to and entered into the said contract of settlement.

"And your petitioners therefore pray that leave may be granted to them by this honorable court to file a supplemental bill against the said Otho F. Matthews, Clyde L. Martin, and R. M. Miller for the purposes of having the said contract of settlement entered into between your petitioners and the said defendants, Otho F. Matthews, Clyde L. Martin, and R. M. Miller, vacated and set aside and for naught held, and also for the purposes of having vacated and set aside the order of this court approving the first and second report of the facts and findings, as filed herein by the master in chancery, and also for the purposes of obtaining such other and further relief in the premises as equity may require and as to your honor shall seem meet and proper."

On October 11, 1912, the defendants filed a motion to dismiss the action, and on October 22d the following was filed:

"Now comes Frederick L. Liebing, one of the complainants in the above entitled cause, by his solicitor, W. H. Douglass, and represents to the court that he no longer wishes to prosecute the petition signed and verified by him on the 1st day of October, 1912, for the purpose of securing leave to file a supplemental bill in this cause, because he says that while said matters and facts may be true as in said petition set forth, yet subsequent investigation has induced him to believe that they are more or less doubtful, and he has also been advised that in all probability they will turn out to be insufficient to support such supplemental bill; that if the matters and things in said petition are true and would be sufficient to support such a supplemental bill, the amount involved is not sufficient to justify a continuance of this litigation, which amount is less than $1,000, which represents the difference in the amount tendered and the amount demanded, which said amount this complainant is willing to be paid out of his interest in said property; that at the time complainant signed said petition, he did so at the request and upon the advice of A. J. Brockschmidt, who at the time was one of the complainant's solicitors, and complainant believed from the advice of his said solicitor that it was to complainant's best interest to sign said petition and continue this litigation. But subsequent investigation induces complainant to believe it is to his best interest to settle this whole matter as provided in the stipulation of June 26, 1912.

"Complainant has therefore dismissed his former counsel A. J. Brockschmidt, Bernard A. Dolan, and Mahan, Smith & Mahan, who no longer represent him in this matter, and this complainant has retained W. H. Douglass, who will henceforth be his sole solicitor in this action. Complainant says he is willing and anxious to accept the tender of settlement made in defendants' notice, but asks the court to give him ten (10) days to comply therewith, and that the court will make such orders and decrees as may protect complainant in his rights, and he will ever pray."

On December 2, 1912, the master filed his third and final report as follows:

"After the coming in of the master's second special report herein, filed on September 20, 1912, it appears that, a controversy having arisen between the parties, complainants and defendants, as to the matter and manner of carry-

ing out the provisions of the stipulation for compromise referred to in and filed with my first special report herein, the provisions of said stipulation for compromise were not carried out at or before the time fixed therein, viz., October 1, 1912. Thereupon on October 1, 1912, the complainants filed in the office of the clerk of this court their application for leave to file in the cause a supplemental bill, based upon the matters set out in their said application. Afterwards, on October 22, 1912, the defendants filed with the clerk of the court their motion to dismiss the complainants' bill.

"Pending the above application of complainants and motion of defendants, it appeared from the declarations of all parties that they were still willing and able to carry out the provisions of said stipulation for compromise; they came before me on October 25, 1912, with the view of reconsidering and taking the master's views upon their differences arising on the said matter; both parties complainants and defendants, however, disclaiming any waiver of their rights, respectively, to bring on for hearing their said application for leave to file a supplemental bill and said motion to dismiss. At such hearing before me on October 25, 1912, as expressive of the master's views in respect of said pending differences, I made the following directions:

"First. That on or before the 8th of November, 1912, the complainants, in and by way of a full payment to defendants of the amount for which they were liable under said stipulation for compromise, in order to be entitled to a reconveyance and delivery of all the property in controversy, should deposit in any bank in Macon City to the credit of the defendants, Matthews, Martin, and Miller, the sum of $54,980.94 (less the sum of $262.05 and $1,649.95, being the amount of funds remaining in the hands of defendants as receivers); that is to say, the net sum of $53,068.94, with 7 per cent. interest per annum thereon from October 28, 1912, until the day of payment.

"Second. That on or before the same date the complainants should also deliver to defendants, or one of their counsel, full release and acquittance to defendants of all liability on certain claims now pending, or on which judgments have been entered in the circuit court of Macon county or before justices of the peace as per a list of said claims in suit or judgment exhibited to the master, or in lieu of such acquittance the complainants might pay, either to the claimants or to defendants, the amount of any said claims, or by deposit of cash in some bank for that purpose fully indemnify the defendants against liability on account of any of such claims as are not so released or paid.

"Third. That contemporaneously with the performance of the above by complainants, the defendants are to transfer and deliver to complainants, or to any other person designated by them in writing, all the personal property involved in this controversy, including all the capital stock of the Blees Military Academy Company and the record books and other books and papers relating to same, and also adequate deeds of conveyance of all the real estate likewise involved.

"Fourth. That defendants should also at the same time procure to be canceled and deliver to complainants or their counsel, or to said person so designated by them, two certain promissory notes executed by the said Academy Company, one to Guthrie & Franklin, and the other to Campbell & Ellison, each being for the sum of $500."

On December 16, the court entered a decree adjudicating that the property in question was the property of the defendants, denying the application to file a supplemental bill, and dismissing the original bill. On January 3, 1913, the complainants filed a petition for rehearing without leave of court and on January 11, 1913, the court denied the petition, and the complainants appeal.

Alfred J. Brockschmidt and Louis H. Berger, both of Quincy, Ill., for appellants.

M. D. Campbell, of Kirksville, Mo., and Ben Eli Guthrie, of Macon, Mo. (Guthrie & Franklin, of Macon, Mo., and Campbell & Ellison, of Kirksville, Mo., on the brief), for appellees.

Before SANBORN and SMITH, Circuit Judges, and POPE, District Judge.

SMITH, Circuit Judge (after stating the facts as above). There are nine assignments of error. The first, second, third, and fourth are that the court erred in denying and dismissing the application of complainants for leave to file a supplemental bill. The fifth is that the court erred in dismissing the complainants' original bill without making a finding of facts. The sixth is that the court erred in dismissing the complainants' bill without finding that it did not show any equity. The seventh and eighth are that the court erred in refusing to grant a rehearing and in overruling the prayer of such petition for rehearing. The ninth the court erred in entering a judgment against the complainants.

It appears that the complainants were given four separate and distinct opportunities to redeem. First, under the original option at any time before March 12th. Instead of availing themselves of this option they commenced this suit on March 1, 1912, for the May term of that year. On May 6th the defendants voluntarily offered the complainants until the June rules, 1912, to make such redemption. Two weeks later this was accepted, but on June 3d in their reply they said they were not able to comply by the June rules. Third, on June 26th, they signed an agreement extending the right of redemption to October 1st, and on that date complainants filed a petition asking to be allowed to file a supplemental bill, and on October 25th the parties all appeared before the master, who extended the time for redemption to November 8th, but although no exceptions were filed to the master's action, the complainants failed for the fourth time to redeem.

[1] All the proceedings in this case took place prior to February 1, 1913, and they were therefore governed by the rules in equity which existed from 1866 to 1913. Rule 57 expressly contemplated leave of court to file a supplemental bill. The question at once arises, when leave of court is thus required, To what extent can the court's action be reviewed by an appellate court?

It has repeatedly been held that there can be no review of the exercise of the discretion of the lower court in allowing or refusing to permit amendments. Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800; Gormley v. Bunyan, 138 U. S. 623, 11 Sup. Ct. 453, 34 L. Ed. 1086.

In Walden v. Craig, 9 Wheat. 574, 6 L. Ed. 164, the Supreme Court pursued the rather unusual course of first pointing out that the action of the court below was erroneous in this respect and then concluded: "But the course of this court has not been in favor of the idea, that a writ of error will lie to the opinion of a circuit court, granting or refusing a motion like this." See Dietz v. Lymer, 61 Fed. 792, 10 C. C. A. 71; Philip Schneider Brewing Co. v. American Ice Machine Co., 77 Fed. 138, 23 C. C. A. 89, and Lange v. Union Pacific R. Co., 126 Fed. 338, 62 C. C. A. 48.

A supplemental bill is a mere adjunct to the original bill. Shaw v. Bill, 95 U. S. 10, 24 L. Ed. 333.

And the rule with reference to amendments has been applied to applications to file supplemental pleadings. Sawyer v. Piper, 189 U. S. 154, 23 Sup. Ct. 633, 47 L. Ed. 757; Vicksburg v. Vicksburg Waterworks Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253; Oregon & Transcontinental Co. v. Northern Pac. R. Co. (C. C.) 32 Fed. 428; Sheffield & B. Coal, Iron & Railway Co. v. Newman, 77 Fed. 787, 23 C. C. A. 459. And to a bill of review. Ricker v. Powell, 100 U. S. 104, 25 L. Ed. 527.

These and others cited in them vary as to the terms of the rule, some saying the subject cannot be considered in the appellate court, others that in the absence of gross abuse of discretion in the trial court it cannot be so considered. In any event we cannot consider the first, second, third, and fourth assignments of error because, in view of the fact that complainants had been accorded four separate opportunities to redeem, we cannot say that in refusing the application to file a supplemental bill the court was guilty of any gross abuse of discretion. By this, however, we do not intimate that the District Court was in error at all in his rulings. This disposes of the first four assignments of error.

[2] Turning now to the seventh and eighth assignments, which are in relation to the petition for rehearing, Mr. Justice Field, in Giant Powder Co. v. Cal. Vigorit Powder Co. (C. C.) 5 Fed. 197, said: "Rehearings are then granted * * * only upon such grounds as would authorize a new trial in an action in law." Bearing this in mind, it has been so long settled that the ruling on a motion for a new trial cannot be reviewed in an appellate court as to scarcely require the citation of authorities. Arkansas Valley Land & Cattle Co. v. Mann, 130 U. S. 69, 9 Sup. Ct. 458, 32 L. Ed. 854; Wright v. Hollingsworth, 1 Pet. 165, 7 L. Ed. 96; United States v. Buford, 3 Pet. 12, 7 L. Ed. 585; Philip Schneider Brewing Co. v. American Ice Machine Co., 77 Fed. 138, 23 C. C. A. 89.

It follows that these assignments, Nos. 7 and 8, cannot be considered.

[3] Turning now to the fifth, it was expressly stipulated between the parties that:

"Under no condition or circumstance shall the time to exercise said option to repurchase said property be extended beyond the first of October, 1912, nor shall a further extension or a right to repurchase said property under said option be asked or sought in any way or form whatsoever."

And further:

"A failure on the part of the said complainants to exercise their right to repurchase the property under the terms and conditions as herein provided, shall ipso facto operate as a dismissal of this action and they shall be forever barred from instituting or prosecuting any other suit or action relative to the subject-matter herein or growing out of or connected with the same."

There is no rule in equity that the court shall in its decree find all the facts necessary to sustain the decree except where, as in Peirsoll v. Elliott, 6 Pet. 95, 8 L. Ed. 332, in the absence of a finding of facts, it would be impossible to tell what the decree in fact meant.

Turning now to the sixth and ninth assignments, the evidence upon

which the court acted is not before us, nor is there anything to show there was any such evidence, but if the evidence failed to show that complainants had paid the money required by October 1st, then under the express terms of the stipulation just quoted the bill was to be dismissed.

There is no error apparent, and the decree of the District Court is affirmed.