Carlos Sabater García, demandante y apelado, *v.* The Union Central Life Insurance Co., demandada y apelante.

No. 4730.—*Sometido:* Diciembre 5, 1929. *Resuelto:* Junio 25, 1930.

*Manuel F. Rossy,* abogado de la apelante; *José Sabater,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Carlos Sabater García constituyó hipoteca sobre una finca, de su propiedad, situada en el término municipal de Mayagüez, a favor de The Union Central Life Insurance Co., una corporación residente en Cincinnati, Ohio, autorizada para hacer negocios en Puerto Rico, en garantía de cierto préstamo que la segunda hizo al primero.

Alegando The Union que Sabater no había cumplido lo pactado, ejecutó la hipoteca, siéndole finalmente adjudicada la finca en pago de la deuda. El procedimiento hipotecario se tramitó en la Corte de Distrito de Mayagüez.

Así las cosas, Sabater inició este pleito en la propia Corte de Distrito de Mayagüez, solicitando que el procedimiento hipotecario seguido contra él por The Union fuera declarado nulo a partir de la orden de requerimiento, por los motivos que en su demanda expone, declarándose nulas también la orden de remate, la subasta celebrada, la escritura de venta otorgada por el márshal a favor de The Union y su inscrip-

ción en el registro, disponiéndose la cancelación de dicha inscripción, librándose, al efecto, el oportuno mandamiento.

El demandante Sabater, una vez que radicó su demanda, pidió su anotación en el registro, y en efecto fué anotada al margen de la inscripción de la finca hipotecada, rematada y adjudicada en el procedimiento hipotecario seguido por The Unión contra Sabater, de que se ha hecho mérito.

Entonces la corte, a petición del demandante Sabater, ordenó la citación de la demandada, The Union, por medio de edictos, que se publicaron en el periódico El Sol, de Mayagüez, enviándose, además, a la demandada, una citación por correo, a su residencia de Cincinnati.

Fué en ese momento que se suscitó la cuestión que motiva este recurso. The Union, por medio de su abogado, compareció a los solos efectos de impugnar la jurisdicción de la corte, bajo la base de que tratándose de una acción personal y residiendo ella fuera de la Isla de Puerto Rico, no podía citársele por edictos.

El tribunal decidió la cuestión así:

"La Corte resolviendo la moción sobre nulidad de emplazamiento presentada por la demandada y discutida en corte abierta en la sesión del 6 del cursante, la declara sin lugar por el fundamento de que al radicarse la demanda de este caso la misma fué anotada en el Registro de la Propiedad, de acuerdo con el artículo 91 del Cód. de Enj. Civil (*Cosme* v. *Santi González,* 37 D.P.R. 763) y se concede a la demandada un término de 20 días para contestar la demanda."

No conforme The Union, apeló para ante esta Corte Suprema. Sostiene que la acción de nulidad ejercitada por Sabater es de naturaleza personal y que por tanto al decidir la cuestión en la forma en que lo hizo, la corte de distrito infringió lo dispuesto en el artículo 81 del Código de Enjuiciamiento Civil, en relación con los artículos 75, 76 y 77 del propio Código, y la doctrina sentada por esta corte en el caso de *Huete* v. *Teillard,* 17 D.P.R. 49.

La parte apelada por el contrario sostiene que la acción por ella ejercitada es de naturaleza real, correspondiendo el

conocimiento de la misma a la Corte de Distrito de Mayagüez en que está situada la finca hipotecada, la nulidad de cuya venta judicial se pide, siendo además válido el emplazamiento por edictos de la demandada, porque cuando se decretó ya se había anotado la demanda en el registro al margen de la inscripción de la finca que se le traspasara en los procedimientos cuya nulidad se pide.

██ Creemos que la parte apelada tiene razón, por entender que la acción por ella ejercitada si no es real, por lo menos participa de la naturaleza de una acción real.

Dice Escriche, en el tomo 1, página 192 de su Diccionario Razonado de Legislación y Jurisprudencia:

"Acción real. La que nace de alguno de los derechos llamados reales, esto es, del dominio pleno o menos pleno, de la sucesión hereditaria, de la servidumbre, o de la prenda e hipoteca. Llámanse reales estos derechos, porque no afectan a la persona, sino a la misma cosa, fijándose y encarnándose, por decirlo así, en ella.

"Todas las acciones reales nos competen o se nos dan contra cualquiera poseedor, séanos conocido o desconocido, hayamos o no tratado con él: lo que no sucede en las acciones personales, las cuales se nos dan contra las personas con quienes hemos contratado y no contra terceros.

"Se tiene por poseedor contra quien podamos ejercer nuestras acciones reales, no sólo el que posee actualmente la cosa, sino también el que dolosamente ha dejado de poseerla. De aquí es que si el demandado destruye maliciosamente o pierde por su culpa la cosa que es objeto del litigio, debe pagar el valor de ella, con los daños y perjuicios, según juramento del actor y previa tasación del juez. (Ley 19, tít. 2, Part. 3.)

"Como son cuatro las especies de derechos reales, deben ser también cuatro las clases de acciones que de ellos dimanan.

"La primera clase, que es la que nace del dominio, abraza tres acciones reales, que son la acción reivindicatoria lo mismo del dominio directo que del útil, la acción publiciana, y la acción rescisoria conocida con el nombre de restitución in integrum.

La segunda clase de acciones reales, que es la que nace del derecho hereditario, comprende dos acciones que son la petición de herencia y la querella de inoficioso testamento: bien que esta querella no es otra cosa que una especie de petición de herencia.

La tercera clase, que es la de aquellas acciones que se dan con motivo de las servidumbres, contiene la acción confesoria y la acción negatoria. La confesoria nace propiamente de la servidumbre, y es una especie de reivindicación. La negatoria no nace de la servidumbre, sino de la libertad natural del predio, y por los mismos principios que rigen las acciones confesoria y negatoria; se consideran reales todas las dirigidas a libertar las fincas de cualquier gravamen que pese sobre ellas, aun cuando sean prestaciones en especie, y todas cuantas se dirigen al cumplimiento de una obligación impuesta sobre los bienes, aun cuando de los títulos no resulten los deudores, porque la obligación se trasmite a los poseedores de las cosas por el mero hecho de la posesión: casac. 27 de Setiembre de 1759 y 9 de Marzo de 1861.

"La cuarta clase de acciones reales es la de aquellas que nacen del derecho de prenda o hipoteca, considerando la prenda o hipoteca como derecho en la cosa y no como contrato, pues el contrato sólo produce acción personal. De este derecho de prenda o hipoteca dimanaban, según las leyes romanas, dos acciones reales, esto es, la Serviana, llamada así del nombre de su autor, y la cuasi Serviana, o sea la Hipotecaria. Aquélla era especial, y ésta general, aquélla se daba en favor del dueño de un predio rústico contra su colono y cualquiera poseedor de las cosas obligadas al pago del precio del arriendo; y ésta a cualquiera acreedor contra su deudor o cualquiera poseedor de las cosas obligadas al pago de la deuda, para perseguirlas y asegurar en ellas el cobro de su crédito. Como la acción hipotecaria abraza todos los casos, sin exceptuar el del arrendador de un predio rústico que estipula prenda o hipoteca, no se hace ya distinción de acción Serviana y cuasi Serviana, y sólo es conocida la Hipotecaria."

Y Cyc. tomo 22, página 1102, expresa:

"In Rem. Término que se aplica a un procedimiento en que la notificación se hace a la cosa misma; un procedimiento para determinar el estado, o condición, de la cosa en sí. En su sentido estricto, es un término que se aplica a un procedimiento seguido directamente contra los bienes, y que tiene por objeto disponer de la propiedad, sin referirse al título de los reclamantes individuales; pero en un sentido más amplio y general, *in rem* es un término que se aplica a las acciones que surgen entre partes, cuando el objeto directo es obtener y disponer de bienes poseídos por ellos, o de algún interés en los mismos."

La acción se dirige contra The Union, es cierto; pero lo

que verdaderamente se trata de resolver en el pleito es que el demandante es dueño de la finca en cuestión y no The Union que aparece como tal en el registro. Si algún derecho tiene el demandante emana de su dominio sobre la finca, no destruído por el procedimiento judicial nulo seguido por la demandada contra él.

No debe perderse de vista que la acción ejercitada por The Union, contra Sabater, para el cobro de su crédito, fué la sumarísima que autoriza la Ley Hipotecaria, en la cual, como se dice en el caso de *Fermina Isabel Anaud viuda de Blanco v. José Martínez González et al.*, decidido el 28 de febrero último. "Excepto en los tres casos insignificantes especificados en el artículo 175, las manos de un deudor hipotecario están atadas. No tiene oportunidad de ser oído. Debe hacer frente al requerimiento de pago en su totalidad o permitir que su propiedad sea vendida. El procedimiento es puramente *ex parte*. Esto ha sido resuelto tan frecuentemente en nuestra jurisdicción y en casos anteriores de Louisiana, que no es necesario citar autoridades."

En cuanto a que la corte de distrito adquiriera jurisdicción a virtud de la anotación de la demanda en el registro, estamos conformes con la parte apelante en que dicha anotación no es el acto equivalente al embargo de bienes del demandado que tuvo en mente la Corte Suprema de los Estados Unidos en el caso de *Pennoyer v. Neff*, 95 U. S. 14.

A virtud de todo lo expuesto opinamos que *la resolución apelada debe confirmarse,* no por el fundamento que se expresa en la misma, que es erróneo, sino por tratarse del ejercicio de una acción que si no es real por lo menos participa de la naturaleza de una acción real.